**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEON M. BROWN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OPERA LIMITED, YAHUI ZHOU, FRODE JACOBSEN, HONGYI ZHOU, and HAN FANG,<br><br>Defendants. | CASE No.: 1:20-cv-00674-JGK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF YUK YAN CHAN TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |

Plaintiff Yuk Yan Chan ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)      appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the publicly traded securities of Opera Limited ("Opera" or the "Company") (a) pursuant and/or traceable to the Company's initial public offering conducted on or about July 27, 2018 (the

"IPO" or "Offering"); or (b) between July 27, 2018 and January 15, 2020, both dates inclusive (the "Class Period"); and

(b)    approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

This action was commenced on January 24, 2020 against the Company, Yahui Zhou ("Y. Zhou"), Frode Jacobsen ("Jacobsen"), Hongyi Zhou, and Han Fang for violations under the Securities Act and the Exchange Act. That same day, an early notice pursuant to the PSLRA was published advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

Defendant Opera, through its subsidiaries, purports to provide mobile and Personal Computer web browser applications, and has also increasingly invested in its fintech businesses, providing mobile loan and financing applications.

The complaint alleges that the Offering Documents (defined below) made false and/or misleading statements and/or failed to disclose that: (1) Opera's sustainable growth and market opportunity for its browser applications was significantly overstated; (2) Defendants' funded, owned, or otherwise controlled loan services applications and/or businesses relied on predatory lending practices; (3) all the foregoing, once revealed, were reasonably likely to have a material negative impact on Opera's financial prospects, especially with respect to its lending applications' continued availability on the Google Play Store; and (4) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

The complaint also alleges that the Exchange Act Defendants (Opera, Y. Zhou, and Jacobsen) made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (1) Opera's sustainable growth and market opportunity for its browser applications was significantly overstated; (2) Defendants' funded, owned, or otherwise controlled loan services applications and/or businesses relied on predatory lending practices; (3) all the foregoing, once revealed, were reasonably likely to have a material negative impact on Opera's financial prospects, especially with respect to its lending applications' continued availability on the Google Play Store; and (4) as a result, the Exchange Act Defendants' public statements were materially false and misleading at all relevant times.

On July 27, 2018, Opera filed a prospectus for its IPO on Form 424B4 (the "Prospectus"), which incorporated and formed part of the Registration Statement (collectively, the "Offering Documents"). That same day, Opera's ADSs began trading the same day on the NASDAQ under the symbol "OPRA" at the Offering price of $12.00 per ADS.

The Prospectus touted Opera's market opportunity and the current user base for Opera's mobile and PC browsing applications. the Prospectus made numerous claims purportedly evidencing Opera's strong position as a leading browsing applications provider, touting, *inter alia*, that "[w]e hold a commanding leadership in South Asia, Southeast Asia and Africa"; "[w]e . . . have one of the largest independent PC browsers worldwide, with a strong presence particularly in Europe"; and that, according to a research firm, "Opera has ranked among the top 30 publishers in terms of app downloads on Google Play in each year from 2014 to 2017." The Prospectus further touted that the "Opera Mini and Opera for Android user base reached 264.3 million average MAUs in the first quarter of 2018, of which 182.0 million were smartphone

users and 82.3 million were feature phone users," and that the Company's "smartphone user base continues to grow rapidly throughout the world." The Prospectus also touted the Company's particularly strong foothold in Africa, South Asia, Southeast Asia, and Europe. The Prospectus also provided only vague descriptions of Opera-affiliated entities providing financial services

Moreover, the Prospectus asserted the Company's innovative products enabled the Company to experience increasingly heavy investor trading volume and, consequently, commissions, which the Prospectus noted was a primary driver of the Company's revenues. Specifically, the Prospectus highlighted the importance of commissions on Opera's profitability, simultaneously touted the Company's "large and highly engaged customer base," and detailed a pattern of rapid revenue growth that purportedly resulted from increased customer accounts and engagement. The Prospectus continuously touted Opera's growth and prospects while providing provided only boilerplate risk statements.

On February 21, 2019, Opera issued a press release announcing its fourth quarter and full year 2018 financial results (the "4Q/FY18 Press Release"). That press release highlighted Opera's "[c]ontinuation of strong growth in the fourth quarter," which was purportedly "propelled by growing user adoption of . . . Opera mobile and PC browsers, with records across all [its] profitability metrics"; as well as touted that "[i]n the fourth quarter, Opera reached 208.0 million average smartphone MAUs, and 60.9 million average PC MAUs, both representing all-time highs."

The 4Q/FY18 Press Release also discussed Opera's investments in the lending market touting its 19.9% ownership share in Opay, which had "launched an agent-centric operation in July as a means to reach the underserved population," and that "[b]y year-end, Opay had recruited 3,000 agents and December's average daily transaction volume was in excess of $1 million, with peak days exceeding $1.5 million, placing Opay among top-tier mobile money

providers in Nigeria less than one year after launch." The 4Q/FY18 Press Release touted Opera's acquisition of the digital lending application Okash from Opay Digital, representing that "[b]y the fourth quarter, OKash generated $1.7 million of revenue from 280,000 microloans, and held active licenses to provide similar microfinance products in four other countries"; that "[f]or Opera, the acquisition of the OKash business represents a new and profitable user-driven business opportunity that will benefit from Opera's existing reach and scale in relevant African and Asian markets, and of relevant demographics"; and that "[t]he acquired OKash business is tracking towards approximately $1.0 million of EBIT in the first quarter of 2019, and is expected to generate EBIT in excess of $6 million for the year as a whole, resulting in an expected acquisition multiple of below 1.6x 2019 EBIT."

On April 17, 2019, Opera filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 20-F"). The 2018 20-F touted Opera's developing fintech business, largely repeating the Company's assertions from the 4Q/FY18 Press Release.

Then on January 16, 2020, Hindenburg published a report asserting, among other issues, that Opera's "browser market share is declining rapidly, down ~30% since its IPO"; that Opera was involved in "predatory short-term loans in Africa and India, deploying deceptive 'bait and switch' tactics to lure in borrowers and charging egregious interest rates ranging from ~365-876%"; that Opera's lending business applications, many of which are offered on the Google Play Store—particularly, OKash, OPesa, CashBean, and Opay—were "in black and white violation of numerous Google rules" aimed at "curtail[ing] predatory lending"; and that consequently, Opera's entire lending business was "at risk of disappearing or being severely curtailed when Google notices" Opera's alleged violation of its rules.

On this news, Opera's ADS price fell $1.69 per share, or 18.74%, to close at $7.33 per share on January 16, 2020. As of the time this complaint was filed, Opera ADSs continued to trade below the IPO price, damaging investors. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B) 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.  Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if

necessary. *See* Ex. 2 hereto.  Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.  Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $28,577.93 in connection with his purchases of Opera securities calculated under the Securities Act and the same amount calculated under the Exchange Act. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Opera securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C.  Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.    Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Securities Act and the Exchange Act by issuing false and misleading and failing to disclose material statements about Opera's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.      Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Opera securities and is therefore, extremely motivated to pursue claims in this action.

### D.  Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

## II.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including filing the initial complaint, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## <u>CONCLUSION</u>

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: March 24, 2020                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

                                         /s/ Phillip Kim
                                         Phillip Kim, Esq. (PK 9384)
                                         Laurence M. Rosen, Esq. (LR 5733)
                                         275 Madison Avenue, 40th Floor
                                         New York, New York 10016
                                         Telephone: (212) 686-1060
                                         Fax: (212) 202-3827
                                         Email: pkim@rosenlegal.com
                                         Email: lrosen@rosenlegal.com

                                         *[Proposed] Lead Counsel for Lead Plaintiff
                                         and Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 24, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Phillip Kim</u>