**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEON M. BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>OPERA LIMITED, YAHUI ZHOU, FRODE JACOBSEN, HONGYI ZHOU, and HAN FANG,<br><br>               Defendants. | Case No. 1:20-cv-00674-JGK<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF OPERA LIMITED'S, DERRICK NUEMAN'S, AND CITIGROUP GLOBAL MARKETS INC.'S <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.  THE COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE
    MISSTATEMENT OR OMISSION ...................................................................... 2

    A.  Allegations Concerning Opera's Failure to Disclose a Decline in Market
        Share Fail to State a Claim ........................................................................... 2

    B.  The Claims Concerning Opera's Alleged Entry Into Fintech and
        Microlending Fail .......................................................................................... 5

II. THE SECTION 11 CLAIM IS TIME-BARRED .................................................. 6

III. PLAINTIFFS' CLAIMS FAIL ON CAUSATION GROUNDS ........................... 9

    A.  Plaintiffs' Section 10(b) Claim Fails Because the Relevant Information
        Was in the Public Domain Prior to the Alleged Corrective Disclosure .................. 9

    B.  Plaintiffs' Section 11 Claim Fails Because Opera's ADS Price Traded
        Above the IPO Price After the Alleged "Truths" Were Revealed ........................ 10

IV. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER ....................... 11

CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns v. Shaar Fund*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................4

*In re Bank of Am.*,
2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012)......................................................................4

*Blackmoss Invs. v. ACA Cap. Holdings*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .......................................................................11

*In re Centerline Holding Co.*,
380 F. App'x 91 (2d Cir. 2010) ...........................................................................................6

*City of Omaha v. Evoqua Water Techs.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)..................................................................................9

*In re Cosi Sec. Litig.*,
379 F. Supp. 2d 580 (S.D.N.Y. 2005)..................................................................................6

*Fila v. Pingtan Marine Enter.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016)..................................................................................9

*Maranga v. Abdulmutallab*,
2013 WL 2399748 (S.D.N.Y. June 3, 2013) .......................................................................7

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003)..................................................................................7

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ...........................................................................................9

*Milano v. Perot Sys.*,
2006 WL 929325 (N.D. Tex. Mar. 31, 2006) ......................................................................5

*Omnicare v. Laborers Pension Fund*,
575 U.S. 175 (2015)..............................................................................................................3

*In re Omnicom Grp.*,
597 F.3d 501 (2d Cir. 2010)............................................................................................9, 10

*In re Pfizer*,
538 F. Supp. 2d 621 (S.D.N.Y. 2008)................................................................................11

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys,*
   769 F.3d 313 (5th Cir. 2014) ......................................................................................10

*Ressler v. Liz Claiborne, Inc.*,
   75 F. Supp. 2d 43 (E.D.N.Y. 1998) ................................................................................4

*In re Qudian*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019)................................................................6

*In re Salix Pharm., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)................................................................12

*S.E.C. v. Gabelli*,
   653 F.3d 49 (2d Cir. 2011)..............................................................................................3

*Silberstein v. Aetna,*
   2015 WL 1424058 (S.D.N.Y. Mar. 26, 2015) ...............................................................8

*Staehr v. Hartford Fin. Servs.*,
   547 F.3d 406 (2d Cir. 2008).............................................................................................7

*TechnoMarine v. Jacob Time*,
   2012 WL 2497276 (S.D.N.Y. June 22, 2012) ................................................................7

*In re Wachovia*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011)..............................................................................9

*White v. H&R Block*,
   2004 WL 1698628 (S.D.N.Y. July 28, 2004) .................................................................4

**Other Authorities**

17 C.F.R. § 229.303(a)(3)(ii)...............................................................................................3

iii

## PRELIMINARY STATEMENT

As explained in Defendants' Opening Brief ("Br."), Plaintiffs' claims fail on multiple grounds. Indeed, those claims are premised nearly entirely on alleged omissions, yet the facts at issue were indisputably disclosed and/or otherwise readily available from public sources to which Opera pointed investors. Plaintiffs' Opposition Brief ("Opp.") does nothing to remedy the deficiencies in their Complaint.

*First*, Plaintiffs attempt to avoid the fact that all relevant facts were disclosed and/or publicly available at all relevant times by newly asserting that information about Opera's web-browser market share data could be accessed only by paying a subscription fee. That assertion is categorically untrue. The data is easily accessed by the investing public for free, dooming Plaintiffs' claims on multiple grounds (including falsity, statute of limitations, and causation grounds).

*Second*, Plaintiffs attempt to fashion new theories. For example, the Complaint alleges that Opera failed, at the time of its IPO, to disclose that it was in the "fintech" and "microlending" businesses. In response to Defendants' Brief, which established that Opera's business strategies were accurately disclosed, Plaintiffs now move away from that allegation, claiming instead that Opera merely "intended" to enter into those businesses at the time of the IPO. But like their initial conjecture, this new, unpled theory is unsupported by any factual allegations.

*Third*, Plaintiffs fail to show how any of their alleged losses could have been caused by the revelation of the "truth" regarding supposedly concealed information when that information was known to the public all along, and/or was revealed to the market months before the lone alleged corrective disclosure.

*Finally*, the Section 10(b) claim fails for the additional reason that Plaintiffs have not come close to pleading particularized facts that give rise to a compelling inference that any Defendant

1

acted with scienter. Indeed, Plaintiffs' reasoning on this score is often illogical, such as their assertion that Defendants made misstatements or omissions to obtain funds in the IPO so they could enter into transactions that occurred *months before the IPO*.

Plaintiffs' Complaint should be dismissed.

## ARGUMENT

**I. THE COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION**

### A. Allegations Concerning Opera's Failure to Disclose a Decline in Market Share Fail to State a Claim

Plaintiffs allege that Opera's statements that its smartphone user base grew from March 2017 to March 2018, as measured by MAUs, were somehow misleading because Opera's browser business "had, according to StatCounter, been losing market share for a period of years leading up to the IPO." Compl. ¶61. But, as established in Defendants' Brief, this "apples-to-oranges" comparison (between the number of MAUs and overall market share) does not render any of Defendants' statements misleading. Br. 11-12.

In their opposition, Plaintiffs attempt to rewrite the pertinent disclosures. Plaintiffs quote Opera's statement that its "***smartphone user base*** followed a positive growth trend" in certain years, and then assert that Defendants "knew that the 'positive growth trend***s***'"—plural—"did not hold for market share" in the mobile browser market. Opp. 14 (emphasis added). But Opera's statements were limited to a single trend related to growth in its "smartphone user base," and Plaintiffs concede those statements were accurate. Opera made no representation whatsoever about overall market share, stating only that, in absolute (not relative) terms, the numbers of users followed a positive trend.

Plaintiffs argue that "the inclusion of positive MAU growth, without disclosure of the decrease in market share, materially misrepresented the state of affairs known to Defendants."

Opp. 14.  But these are two different, independent metrics.  And Plaintiffs do not and cannot explain why truthful statements about one require additional disclosure about the other.[1]

Plaintiffs also argue that Opera had a duty to disclose a decline in market share pursuant to Item 303 of Regulation S-K, stating that if Opera was a market leader "while at the same time experiencing a decline in its overall market share," then "that fact is plainly a 'known trend or uncertainty' that needed to be disclosed."  Opp. 15.  But Item 303 expressly provides that any "known trends or uncertainties" only need to be disclosed if a company "reasonably expects" it will have a "material . . . impact on net sales or revenues or income."  17 C.F.R. § 229.303(a)(3)(ii).  In an attempt to fit within the strictures of Item 303, Plaintiffs allege that a decline in overall market share was "reasonably likely to negatively impact" Opera's revenue.  Compl. ¶66.  But this conclusory assertion is unsupported by any factual allegation that the Defendants had reason to know—at the time of the IPO Prospectus—that a decline in the overall share of an ***increasing market*** would have any material impact on Opera's sales, revenues, or income.  In fact, the opposite was true.  Plaintiffs concede that Opera's revenue (overall and for its browser business)

---

[1] Unlike here, the cases Plaintiffs cite for the proposition that issuers cannot speak half-truths involved omitted facts that bore directly on the facts that were disclosed.  Opp. 15; *Omnicare v. Laborers Pension Fund*, 575 U.S. 175, 181 (2015) (statements regarding compliance with laws potentially misleading in light of omission of attorney's warning that particular contract carried risk of anti-kickback liability); *S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011) (statement that adviser attempted to reduce or eliminate market timing potentially misleading because it omitted that adviser let one major investor engage in market timing).

*increased* from 2018 to 2019.  Opp. 5 n.1.[2]  It also *increased* from 2017 to 2018.  Declaration, November 9, 2020 (filed herewith) ("Hood Reply Decl."), Ex. A, 2018 Annual Report at 56.[3]

Even setting all of this aside, as Defendants established in their Brief, Plaintiffs' claims also fail because the "truth" concerning Opera's market share was publicly available at the time of the alleged misstatements.  Br. 17-19.  Plaintiffs contend that a "truth on the market" defense is "inappropriate for a motion to dismiss," and that the StatCounter market share data was not publicly available because it purportedly could only be accessed through a subscription.  Opp. 16. Plaintiffs are doubly wrong.  Courts routinely grant motions to dismiss based on "truth on the market" defenses, particularly where, as here, the Plaintiffs' own allegations are drawn from a public document incorporated by reference in the Complaint.  *White v. H&R Block*, 2004 WL 1698628, at *12 (S.D.N.Y. July 28, 2004); *In re Bank of Am.*, 2012 WL 1353523, at *8 (S.D.N.Y. Apr. 12, 2012).  And, as explained in Section III.A *infra*, the StatCounter data was (and is) readily available to the public for free.[4]

---

[2] Plaintiffs' argument that the Court may not consider revenue figures in the annual report Opera filed with the SEC and an Opera-issued press release (Opp. 5 n.1) is incorrect.  *ATSI Commc'ns v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007) (considering "documents filed with the SEC"); *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 47 (E.D.N.Y. 1998) (considering press release).

[3] Plaintiffs now claim that "[b]etween 2017 and 2018, the [Browser and News] segment's *contribution* to overall revenue dropped from 84.7% to 46.3%."  Opp. 16 (emphasis added).  These figures are not alleged in the Complaint. And in any event, the *relative* contribution of the Browser and News segment to Opera's total revenue says nothing about any increase or decrease in revenue for that segment.

[4] Plaintiffs also misstate the record in contending that statements by Mr. Nueman that Opera had "close to 50% market share" in Nigeria were not mere "puffery."  Opp. 21-22.  Defendants established in their Brief that the statement that Opera was a "*market leader*" was nonactionable puffery, which has nothing to do with Mr. Nueman's statements.  In

4

## B.    The Claims Concerning Opera's Alleged Entry Into Fintech and Microlending Fail

Plaintiffs allege that Opera's Offering Documents should have disclosed the Company's "fintech segment" and "development of its microlending business" and the risks attendant thereto, and that such disclosure was required pursuant to certain Items in Regulation S-K. Compl. ¶¶67-70, 75, 83. As established in Defendants' Brief, however, Plaintiffs fail to allege facts that show Opera had entered into fintech or microlending at the time of the IPO. Indeed, Plaintiffs' own allegations—and documents incorporated into the Complaint, or as to which this Court can take judicial notice—confirm that Opera did ***not*** enter the fintech and microlending business until ***after*** the IPO, when it acquired OKash in December 2018. Br. 13-15. Thus, at the time of the IPO, there was nothing for Defendants to disclose about fintech, microlending, or the risks thereof.

Plaintiffs now concede that Opera was not involved in fintech and microlending at the time of the IPO, maintaining instead that Opera should have disclosed its "plans to imminently engage in fintech" at the time of the IPO (Opp. 11). But Plaintiffs allege no facts about Opera's intent or "plans" at the time of the IPO with respect to its future business strategies. *Milano v. Perot Sys.*, 2006 WL 929325, at *18 (N.D. Tex. Mar. 31, 2006) (rejecting claim that defendant violated Item 101(c)(1) by failing to disclose line of business involving illegal gaming services where plaintiffs "failed to plead with sufficient particularity that [defendant's] gaming proposals in fact constituted

---

addition, Mr. Neuman was referring to market share with respect to *mobile users* only (of which there is no dispute was "close to 50%," Br. 18 n.6), and contrary to Plaintiffs' contention (Opp. 22), Mr. Nueman and Opera did disclose that the relevant market in Africa was mobile users. Declaration (ECF 58) ("Hood Decl."), Ex. G, at 4-5 ("mobile, we're very strong in emerging markets, Africa and Asia"; "[o]bviously, in a place like Africa and Asia, there aren't a lot of PC users"); *id.* Ex. D, at 33 ("users in Africa and Asia are attracted to our mobile browsers"), 36 ("our mobile browsers have been very popular in Africa").

a 'line of business'" or that defendant "intended [it] to be a 'line of business'"). Plaintiffs emphasize that as of the IPO, Opera held a minority interest in, provided a loan to, and had a services agreement with OPay. Opp. 11-12. But those facts were disclosed in the Offering Documents. Br. 6-7. And Plaintiffs' arguments that these disclosed facts evince an unspecified, undisclosed plan for a future entry into the fintech industry are wholly conclusory and speculative. Indeed, Plaintiffs' citation to *In re Qudian* demonstrates that Plaintiffs must allege more to show that Opera had an established plan to enter the fintech industry at the time of the IPO. 2019 WL 4735376, at *9 (S.D.N.Y. Sept. 27, 2019) (plaintiffs' claims would likely fail if alleged future plans were "merely under consideration"). Plaintiffs' allegations fall well short.

In addition, courts consistently hold that Item 101 does not require disclosure of potential future business strategies or plans. *In re Centerline Holding Co.*, 380 F. App'x 91, 94 (2d Cir. 2010) (affirming dismissal of securities claims because defendants "had no clear duty to disclose their [future] plans"); *In re Cosi Sec. Litig.*, 379 F. Supp. 2d 580, 586-88 (S.D.N.Y. 2005) (plaintiffs failed to allege facts establishing that company was required to disclose potential business plan it had not yet implemented).[5]

## II.    THE SECTION 11 CLAIM IS TIME-BARRED

Plaintiffs' Section 11 claim, even if otherwise actionable (it is not), should be dismissed as time-barred under the one-year limitations period. The claim is based on facts that were publicly

---

[5] Plaintiffs contend that in *Cosi*, "Cosi had merely researched the possibility of franchising for two months before the Prospectus was issued, and did not allege that a franchising plan had been submitted to or approved by the board, or that any affirmative steps had been taken to implement a franchising plan." Opp. 12. But here too, there are no allegations that Opera made any decision or took any steps prior to the IPO to later acquire OKash.

available to Plaintiffs for well over a year before they brought suit in January 2020, and, in some cases, facts that were available at the time of the IPO in July 2018.

Plaintiffs attempt to premise liability on Opera's alleged failure to disclose that it had, "according to StatCounter, been losing market share for a period of years prior to the IPO." Compl. ¶¶60-61. But as established in Defendants' Brief, the very StatCounter data to which Plaintiffs point was *publicly available* at the time of the IPO and repeatedly referenced in Opera's Offering Documents. Br. 20-21.

Plaintiffs falsely claim that StatCounter is a "subscription service" and that its market share data is "behind a paywall." Opp. 8, 16. In truth, this StatCounter data can be readily accessed by investors, at any time, *for free*, with no subscription, and we respectfully invite the Court to visit the pertinent website to see this for itself. Hood Reply Decl. Ex. B, https://gs.statcounter.com/.[6] The website to which Plaintiffs direct the Court is an entirely separate portion of the StatCounter website that sells analytic tools which track "visitor activity" on websites, Apton Decl. Ex. B (ECF 61-2): *it contains no web browser market share data whatsoever*.[7]

Citing *Staehr v. Hartford Fin. Servs.*, 547 F.3d 406 (2d Cir. 2008), Plaintiffs assert they "cannot be charged with knowledge of or a duty to investigate misrepresentations concerning Opera's market share." Opp. 18. But in *Hartford*, the court was "reluctant to affirm" a dismissal

---

[6] The Court may take judicial notice of StatCounter's publicly available market share data, which was also incorporated by reference in the Complaint. *See, e.g.*, *Maranga v. Abdulmutallab*, 2013 WL 2399748, at *3 n.3 (S.D.N.Y. June 3, 2013); *TechnoMarine v. Jacob Time*, 2012 WL 2497276, at *1 n.1 (S.D.N.Y. June 22, 2012).

[7] Even if the data was available only for a fee, it still would be considered publicly available. *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 378-82 n.61 (S.D.N.Y. 2003) (dismissing securities fraud claim as untimely where plaintiffs were on inquiry notice based on information in subscription news sources).

where "the specialty publication coverage is relatively minimal and we do not know the publications' circulation or the extent to which a reasonable investor would be aware of the limited coverage." *Id.* at 532. Here, by contrast, any reasonable investor would be aware of the StatCounter data because Opera directed investors to it—and did so in the very disclosures Plaintiffs claim were deficient.[8] Br. 20-21. And unlike in *Hartford*, where the coverage of the relevant issue was "relatively minimal," StatCounter prominently addresses the very market share information that Plaintiffs claim was concealed.

With respect to microlending, as established in Defendants' Brief (Br. 21), Plaintiffs rely on facts that Opera ***disclosed in its Offering Documents*** (including that Opera had a service agreement with and owned 19.9% of OPay) to support their claim that "[a]s of the date of the IPO, Opera had already commenced microlending operations" (Compl. ¶71). Plaintiffs fail to refute this plain infirmity and, as such, their claim based on these allegations is also untimely. Plaintiffs' only response is to assert that "Opera's release of its annual report for 2018" would have been "the first notice of the ***extent and significance*** of Opera's fintech operations." Opp. 19 (emphasis added). But they provide no explanation for why this is the case or why the "extent and significance of Opera's fintech operations," as opposed to the fact of their existence, is what makes their claim timely.[9]

---

[8] For this same reason, *Silberstein v. Aetna*, where the court found there was no reason why certain reports would "have 'come to the attention' of the ordinary shareholder," is completely inapposite. 2015 WL 1424058, at *8 (S.D.N.Y. Mar. 26, 2015).

[9] Plaintiff Lau also lacks standing to assert a Section 11 claim. Br. 21-22. While Plaintiffs assert that Defendants "provide no factual support" for the assertion that Lau's shares are not traceable to the IPO (Opp. 19), Lau's own Certification shows she did not purchase any shares until November 2019, after Opera's Secondary Offering and over a year after the IPO. *See* ECF 27-1. Moreover, Plaintiffs' claim that Defendants must "provide factual support" that

### III.   PLAINTIFFS' CLAIMS FAIL ON CAUSATION GROUNDS

**A.   Plaintiffs' Section 10(b) Claim Fails Because the Relevant Information Was in the Public Domain Prior to the Alleged Corrective Disclosure**

Plaintiffs allege only one corrective disclosure—the January 2020 Hindenburg Report. Compl. ¶153.  According to Plaintiffs, the Hindenburg Report revealed to the market that "Opera's 'browser market share is declining rapidly, down ~30% since its IPO.'"  *Id.*  But, as established, Opera's market share data was available to the public long before the Hindenburg Report. Therefore, that Report could not amount to a corrective disclosure of market share data.  Br. 28-29.  Indeed, the Hindenburg Report itself contains a disclaimer that "***all*** information" in the Report was "obtained from ***public sources***."  Hood Decl. Ex. H, at 46 (emphasis added); *Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013) (affirming grant of motion to dismiss where alleged corrective disclosure contained nearly identical disclaimer; "fact that the sources in [corrective disclosure] were already public" was "fatal" to "claim of loss causation").[10]

Plaintiffs argue that the Hindenburg Report did not "simply reprint data available to the market but analyzed how and why Opera's browser business was weaker than Defendants

---

Plaintiffs lack standing is not supported by the law.  The very cases Plaintiffs cite make it clear that it is incumbent on ***Plaintiffs*** to establish their standing.  *City of Omaha v. Evoqua Water Techs.*, 450 F. Supp. 3d 379, 403 (S.D.N.Y. 2020); *In re Wachovia*, 753 F. Supp. 2d 326, 372-73 (S.D.N.Y. 2011).

[10] Plaintiffs also contend that Opera's stock price decline after the Hindenburg Report is "prima facie evidence" that the negative information was not previously available to the market.  Opp. 25.  Almost every securities fraud claim involves a stock drop after the alleged corrective disclosure, yet courts still reject claims on loss causation grounds if the negative information was revealed prior to the alleged corrective disclosure.  *In re Omnicom Grp.*, 597 F.3d 501, 507-508, 512-13 (2d Cir. 2010); *Fila v. Pingtan Marine Enter.*, 195 F. Supp. 3d 489, 496-97 (S.D.N.Y. 2016).

represented and the motivation for its shift to fintech." Opp. 26.[11]   But courts recognize that a "repackaging" of public information—which is all the Hindenburg Report does—is not a corrective disclosure.   *Omnicom*, 597 F.3d at 512 ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.").[12]

With respect to Opera's entry into microlending (which Plaintiffs concede Opera disclosed by at least April 2019, Opp. 6; Compl. ¶¶84-86), Plaintiffs contend that Opera's disclosures in *February 2019* did not disclose that it was supposedly at risk of violating certain Google Play policies.  Opp. 27.  But Plaintiffs admit those policies did not even exist until *August 2019*.  Br. 17; Compl. ¶¶32, 88.  As such, it is impossible for the Hindenburg Report to constitute a corrective disclosure of any of the alleged omissions concerning Opera's microlending business when the alleged risk of violating certain Google Play policies did not exist until *after* those omissions.  Br. 16-17.  Plaintiffs fail to refute this.

**B.      Plaintiffs' Section 11 Claim Fails Because Opera's ADS Price Traded Above the IPO Price After the Alleged "Truths" Were Revealed**

In their Brief, Defendants demonstrated that all of the supposed "truths" about the alleged misstatements and omissions in the Offering Documents were disclosed by no later than February

---

[11] Plaintiffs also claim the Hindenburg Report "incorporated [certain] non-public evidence of predatory loan compliance violations" (Opp. 8), but this was not alleged in the Complaint and, in any event, the Report itself makes clear that it is based on *public* information (*supra* at 9).

[12] The cases cited by Plaintiffs (Opp. 26) are inapposite.  In those cases, unlike here, the alleged corrective disclosures contained new information and/or "complex economic data understandable only through expert analysis [that] may not be readily digestible by the marketplace."  *Pub. Emps. Ret. Sys. of Miss. v. Amedisys*, 769 F.3d 313, 323 & n.3 (5th Cir. 2014).

2019, following which Opera's ADS price traded above the IPO price for dozens of trading days. Br. 30. Plaintiffs argue that these "moves were temporary." Opp. 20. But that is irrelevant. The fact that Opera's ADSs traded above the IPO price—even temporarily—shows that the allegedly previously concealed information could not have caused the ADS price to decline. *Blackmoss Invs. v. ACA Cap. Holdings*, 2010 WL 148617, at \*11 (S.D.N.Y. Jan. 14, 2010) (dismissing Section 11 claims based on negative causation defense where stock continued to trade above IPO price after corrective disclosures for a portion of alleged class period).

## IV. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER

As Defendants explained in their Brief, Plaintiffs fail to allege any particularized facts that show any Defendant acted with scienter, which dooms their Section 10(b) claim. Plaintiffs' weak opposition only underscores this pleading deficiency.

Plaintiffs' primary argument is that "[u]nlike Plaintiffs, Defendants had access to StatCounter," and that "misstating Opera's actual market share status, while knowing, or having access to, contradictory StatCounter data" demonstrates scienter. Opp. 23. But this fails in light of the indisputable and judicially noticeable fact that StatCounter data was public and readily accessible. *Supra* Section III.A. And Plaintiffs fail to refute that the far more "compelling inference" is that Defendants simply believed (correctly) that the StatCounter data concerning ***overall*** market share did not bear on any of their statements concerning MAUs or that Opera was a "market leader." *Supra* Section I.A. Indeed, the inference Plaintiffs ask the Court to draw—that Defendants lied about data that anyone could obtain and then directed investors to that same data— is not just less compelling, ***it is wholly implausible***. *In re Pfizer*, 538 F. Supp. 2d 621, 637 (S.D.N.Y. 2008) ("That the information was publicly available . . . weakens any inference that defendants intended to defraud the market.")

Plaintiffs also assert—for the first time—that Defendants acted with scienter because they

"knew" but failed to disclose that Opera was transitioning to fintech/microlending at the time of the IPO. Opp. 24-25. In support of that allegation, Plaintiffs cite to the publicly disclosed fact that, in March 2018, Opera employees were providing services to OPay. But this says nothing about any Defendant's state of mind and is not the type of particularized fact that gives rise to a "strong inference" of scienter. In addition, the single case cited by Plaintiffs lends no support, as it involved a company that failed to disclose facts concerning a "core operation." Opp. 24 (citing *In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016)). Here, Plaintiffs do not allege that fintech or microlending was a "core operation" at the time of the IPO—in fact, they allege that Opera's browser business was its "core" business. Compl. ¶38.

Nor can scienter be inferred because Y. Zhou and/or H. Zhou (who are unrelated) allegedly obtained a benefit that "flowed from the cash raised in Opera's public offerings" because "Opera otherwise would have lacked the cash necessary to enter into [certain] related-party transactions." Opp. 24. The Complaint contains no allegation whatsoever that Opera's cash position would have been insufficient to fund the transactions absent the Offerings. Equally baseless is Plaintiffs' suggestion that the fact that a number of these transactions occurred before the IPO is irrelevant because "preparations for the IPO were" purportedly "well underway" by early 2018. Opp. 24. By definition, the proceeds of the IPO ***could not have been used for transactions that occurred before the IPO***, and so the alleged benefit to Y. Zhou and/or H. Zhou cannot possibly have "flowed from" the alleged misstatements in the Prospectus. Moreover, Plaintiffs do not even attempt to address their failure to plead that there was anything improper about these transactions. Br. 26 & n.7.[13]

---

[13] Plaintiffs ignore all of Defendants' arguments as to why the allegations concerning *Qudian* fail to adequately plead scienter. They also fail to address the fact that they nowhere allege that Mr. Nueman acted with scienter with respect

**CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:    November 9, 2020
              New York, New York

**MILBANK LLP**

By:    */s/ Scott A. Edelman*
         Scott A. Edelman
         James G. Cavoli
         Jed M. Schwartz
         Andrea G. Hood
         55 Hudson Yards
         New York, NY 10001
         Tel.: 212-530-5000
         Fax: 212-530-5219
         sedelman@milbank.com
         jcavoli@milbank.com
         jschwartz@milbank.com
         ahood@milbank.com

*Attorneys for Defendants Opera Limited and
Derrick Nueman*

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

By:    */s/ Audra J. Soloway*
         Susanna M. Buergel
         Audra J. Soloway
         1285 Avenue of the Americas
         New York, NY 10019
         Tel.: 212-373-3289
         Fax: 212-492-0289
         sbuergel@paulweiss.com
         asoloway@paulweiss.com

*Attorneys for Defendant Citigroup Global Markets
Inc.*

---

to the two analyst calls and, as such, the Section 10(b) claims premised on those calls should be dismissed.  Br. 27.

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to Judge John G. Koeltl's Individual Practice No. II.D and the Stipulation and Order, dated July 30, 2020 (ECF No. 52), this memorandum of law contains 4,000 words and complies with the formatting requirements for Memoranda of Law in Civil Cases set forth in Judge Koeltl's Individual Practices.

Dated:  November 9, 2020

*/s/ Andrea G. Hood*
Andrea G. Hood

14